*Filed* *RECEIVED*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

10 SEP 13 AM 10: 51

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

| | | |
|---|---|---|
| **LAKELAND REGIONAL** | ) | |
| **MEDICAL CENTER, INC.,** | ) | |
| on behalf of itself and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION NO.** |
| v. | ) | 8:10 CV 2008 33 TGW |
| | ) | |
| **ASTELLAS US, LLC; and** | ) | **JURY TRIAL DEMANDED** |
| **ASTELLAS PHARMA US, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
## INJUNCTIVE RELIEF SOUGHT

Plaintiff, LAKELAND REGIONAL MEDICAL CENTER, INC. (hereinafter

referred to as "plaintiff" or "plaintiff LRMC"), a not-for-profit corporation, files

this complaint individually and on behalf of a class of all those similarly situated,

against defendants ASTELLAS US, LLC and ASTELLAS US, INC. (hereinafter

collectively referred to as "defendant" or "defendant Astellas"). In support thereof,

the plaintiff states the following:

### INTRODUCTION

1.      This is a class action against defendant Astellas for actual and

compensatory damages, actual damages trebled, punitive damages, attorneys' fees,

TD $ 57108
$ 350

declaratory relief, and injunctive relief.  Defendant Astellas has engaged in anticompetitive, monopolistic, and exclusionary conduct in the marketing, distribution, and sale of a patent license for the process of inducing pharmacologic stress in cardiac patients undergoing a "stress test".  Additionally, Defendant Astellas engages in the same or similar behavior in the market of a product, adenosine, utilized in the Defendant Astellas' process, causing economic harm and damages to thousands of purchasers-consumers of the products nationwide.  The defendant also has engaged in tortious interference with prospective economic advantage.

2.     The claims in this action arise under federal and state statutory common law, including Sections One and Two of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, and Section Three of the Clayton Antitrust Act, 15 U.S.C. § 14, as well as Florida state antitrust law,  F.S.A. §§ 542.18 and 542.19, and Florida common law.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331-1332, 1337.  This action arises under federal antitrust law, the parties are diverse, and the amount in controversy exceeds one million dollars.  Defendant Astellas' annual report suggests that its sale of adenosine products exceed one hundred million in annual revenues.

2

4.     Venue is proper pursuant to 28 U.S.C. § 1391.  A substantial part of the events giving rise to this action occurred in the Middle District of Florida.

## IN COMMERCE AND EFFECT ON INTERSTATE COMMERCE

5.     Defendant Astellas is engaged in interstate commerce and the actions challenged herein occur in the course of that commerce.  Moreover, the defendant's anticompetitive conduct has had a substantial effect upon interstate commerce.

6.     Defendant Astellas has distributed and continues to distribute adenosine products valued in the millions of dollars annually from their headquarters in Illinois to plaintiff LRMC's place of business in Florida, and to other purchasers throughout the country.  Payments are remitted from across the country to the defendant.  Those payments have been inflated by approximately 450% - the difference between the competitive market price for adenosine and the price coerced by the defendant for the defendant's adenosine products.

## PARTIES

7.     Plaintiff, Lakeland Regional Medical Center, Inc. (hereinafter referred to as "plaintiff" or "plaintiff LRMC"), is a not-for-profit corporation of the State of Florida, with headquarters in Lakeland, Florida.   The plaintiff is a full-service hospital which provides medical care and services to patients from throughout this District, including cardiac diagnosis and treatment.

8.     Defendants Astellas US, LLC and Astellas Pharma US, Inc. (hereinafter collectively referred to as "defendant" or "defendant Astellas") are Delaware corporations with headquarters located in Deerfield, Illinois. Astellas Pharma US, Inc., is the U.S. affiliate of Tokyo-based Astellas Pharma, Inc., which claims it is "committed to becoming a global category leader" in a variety of health care products. Defendant Astellas is the exclusive licensee in the United States of U.S. process patents for the administration of adenosine to patients undergoing cardiac stress tests. These patents are owned by King Pharmaceuticals, Inc., an S&P 500 pharmaceutical company headquartered in Bristol, Tennessee.

## STATEMENT OF THE FACTS

### Industry Background and Relevant Market

9.     Myocardial perfusion imaging ("MPI") is a test used to diagnose cardiac artery disease ("CAD") by the injection of radioactive dyes into the bloodstream. Radiological images are then taken to identify areas of low blood perfusion to the heart. CAD affects millions of Americans annually, whose treatment depends upon timely and accurate diagnosis. CAD is one of the leading causes of death in the United States.

10.     MPI is usually done while the patient is placed under stress in order to maximize the accuracy of the test. The need to create a setting of stress requires patients to exercise on a treadmill to increase cardiac blood flow. When a patient is

4

unable to perform such exercise, cardiologists utilize a "pharmacological stress" procedure to create stress, most often through the administration of adenosine.

11.    All health care providers, including plaintiff LRMC and cardiologists working with the plaintiff, must adhere to medically recognized standards of care when treating patients.  Failure to do so would jeopardize the health of patients and potentially create liability for any adverse event.  In particular, the plaintiff and other members of this class adhere to the medically recognized standards of care for conducting cardiac stress tests.

12.    Adenosine is a naturally occurring compound that induces vasodilation (i.e., dilation of blood vessels).  Because of this characteristic, adenosine is used to induce "pharmacologic stress" except for those relatively few patients who cannot tolerate adenosine.  Adenosine is also commonly used in traditional stress tests because the combination of physical and pharmacologic stress typically results in a more accurate diagnosis.  When performed in this manner, adenosine administration is termed "adjunct therapy" to the MPI procedure.  The administration of adenosine is the medically recognized standard of care when pharmacologic stress is required to perform MPI.  When adenosine is required for MPI, more than 90% of the adenosine used is supplied by defendant Astellas.  Adenosine is administered to induce cardiac stress in more than 90% of cardiac stress tests conducted nationwide.

13.     Defendant Astellas has monopoly power – the power to control price or exclude competition – in the market for adenosine used for MPI in the United States, as discussed below.  The defendant also controls greater than 60% of sales of adenosine for all purposes in the United States.

14.     Defendant Astellas, plaintiff LRMC, and other health care providers recognize and perceive that "adenosine used for MPI" is a relevant product submarket, which the defendant controls.  The defendant, the plaintiff, and other health care providers also recognize and perceive that the process used to administer adenosine to patients during MPI is a relevant product market, which patent defendant Astellas controls in the United States.

15.     The relevant geographic market for this action is the United States of America and its territories.

16.     The patented process used to perform continuous adenosine infusion in MPI, and the unpatented product, adenosine, are recognized and perceived by providers and purchasers as two distinct products.

**Astellas' Control of the MPI Process and Adenosine Markets**

17.     Defendant Astellas is the exclusive licensee in the United States of two process patents related to the administration of adenosine in MPI tests and relevant to this lawsuit.   The owner of the patents is King Pharmaceuticals, Inc., headquartered in Tennessee.

6

18.   United States Patent No. 5,070,877 (the "877 Patent") relates solely to the use of their adenosine product, Adenoscan®,  for its vasodilative properties when used in conjunction with myocardial imaging.   That patent expired on May 18, 2009.   United States Patent No. 5,731,296 (the "296 Patent"), also held by defendant Astellas, is for a method of continuous infusion of adenosine, which was previously administered solely by injection.   This patent will expire on March 24, 2015.

19.   Defendant Astellas believes the '296 Patent grants the defendant exclusivity for the only medically recognized process to administer adenosine in MPI, even upon the expiration of the '877 Patent.   The majority of all MPI stress tests are now administered utilizing the process patented by the '296 patent.   No other medically recognized process for inducing stress for an MPI test is available.

20.   Continuous adenosine infusion is medically recognized to be the most effective method of adenosine administration when used as an adjunct to MPI procedures.

21.   Defendant Astellas also markets an additional adenosine-derived product, Lexiscan®,  to complement Adenoscan® , as described in the next paragraph.

22.   Defendant Astellas manufactures and sells two adenosine-based products, tradenamed Adenoscan® and Lexiscan®, used in MPI procedures.   The

defendant's sales of adenosine-based products constitute approximately 90% of sales for the agent used in medically recognized MPI procedures. Adenoscan®, Lexiscan®, and adenosine, generally, are not patented or patentable. Other companies also sell adenosine commercially. The adenosine sold by these other companies is not meaningfully distinguishable from the defendant's products.

23.   Defendant Astellas charges approximately 450% more per unit for its unpatented adenosine products than do other sellers of adenosine: $8.05 per ml. versus $1.76 per ml. This price difference adds millions of dollars each year to the national cost of health care.

**Adenosine Market and Relationship between Healthcare Providers and Astellas**

24.   In a letter dated July 31, 2008, defendant Astellas gave notice to the plaintiff and other members of the class that they must purchase only defendant's adenosine product, Adenoscan®, for use in MPI procedures after the '877 Patent expired. The defendant further claimed in the July 31, 2008, letter that use of another manufacturer's adenosine would be an infringement of the '296 Patent.

25.   This July 31, 2008, letter was mailed "To Whom It May Concern" and signed by Catherine B. Levitt, Associate General Counsel of Astellas US, LLC. Based upon information and belief, the content of defendant's letter was distributed by the defendant to a large number of hospitals and healthcare providers throughout the country, as well as to actual and potential alternative suppliers of adenosine.

8

26.    The July 31, 2008, letter contains the following statements:

[S]ale of . . . an Adenoscan® substitute for that use [in MPI] is currently protected by two independent Unites States patents. . . . When Adenoscan® is purchased from Astellas, the purchaser is given permission to use the drug as an adjunct for MPI.  But when adenosine from an unauthorized source is used for MPI . . . the seller and the user are infringing both the '877 and '296 patents and thus could be liable for patent infringement. . . .  [E]ven after May 18, 2009, only Astellas . . . will be legally permitted to use adenosine as an adjunct for MPI . . . .

The claims stated above create the erroneous perception that an Adenoscan®

substitute – adenosine – is literally covered by the '877 and '296 patents, so that

those process patents also grant *de jure* exclusivity over Adenoscan® products.

27.    This letter makes clear that defendant Astellas is conditioning, or

leveraging, the grant of a license to use its patented process for administering

adenosine in MPI to the purchase of adenosine, itself, from the defendant, at a

450% higher price than the market price.  This means that if health care providers

seek a license to use the patented process, they must agree to purchase the price-

inflated, unpatented adenosine from the defendant.

28.    In a letter dated September 14, 2009, defendant Astellas specifically

directed the plaintiff to refrain from purchasing adenosine from any other seller.  In

the September 14, 2009, letter, also written by Catherine B. Levitt, addressed to

plaintiff's employee, Judith Policastro, defendant states:

> While there is no patent that covers the *composition*, adenosine, this *method of use* patent precludes the use of generic adenosine for MPI as a substitute for Adenoscan®. Astellas is the only party that can authorize the patented use of an adenosine infusion for MPI studies. Such permission is **only** granted when Adenoscan® is purchased . . . from Astellas. . . . [Emphasis original].

The September 14, 2009, letter also cites recent patent infringement litigation initiated by the defendant and, misleadingly, states:

> In view of Astellas' continuing patent rights to Adenoscan, we are deeply concerned to learn that Lakeland Regional Medical Center is using a generic Adenocard® product . . . .

As acknowledged by the defendant earlier in the same letter, it does not possess "patent rights" to Adenoscan® or an y adenosine product.

29.     Defendant Astellas, through its sales representatives, made further oral representations regarding the '877 and '296 Patents to plaintiff LRMC's employees in the hospital pharmacy.

30.     Defendant Astellas' refusal to license or grant permission for its '296 process patent for the continuous infusion of adenosine in MPI, unless health care providers purchase adenosine from the defendant at 450% of market price, was confirmed in a subsequent letter from defendant to plaintiff dated November 20, 2009:

> Your letter indicates that LRMC wishes to obtain . . . Adenoscan® at a cost competitive with generic adenosine cost, or desires terms that would allow LRMC to utilize generic adenosine as an adjunct to MPI.

... [P]roviding such pricing or terms would not be fair to Astellas' many other customers.

31. This insistence by defendant Astellas upon its leveraging of its '296 process patent rights, and its refusal to permit plaintiff LRMC and others to purchase adenosine from other suppliers, has forced the plaintiff and class members to agree to purchase the defendant's adenosine product for MPI at monopolistic price levels and not purchase adenosine from competing suppliers.

32. If not for defendant Astellas' refusal to license or permit the use of its MPI process, plaintiff LRMC could have purchased adenosine for this procedure at a substantial savings from one of several competing manufacturers of adenosine, including Sagent Pharmaceuticals, APP Pharmaceuticals, Teva Pharmaceuticals, and Bedford Laboratories.

33. If defendant Astellas had separately licensed the use of its '296 Patent process, the actual market value of that process would have been determined in the marketplace, likely spurring innovation and allowing medically recognized alternative processes to be developed.

34. If defendant Astellas had allowed plaintiff LRMC and others to purchase adenosine from competing suppliers, additional suppliers for adenosine likely also would have entered that market. Moreover, the price paid for adenosine

would have been less than one-fourth the price paid to the defendant. The national savings in healthcare costs would have been millions of dollars annually.

**Anticompetitive Conduct by Astellas**

35. Defendant Astellas has attempted to effectively extend its '877 Patent beyond its expiration date by requiring the use of only Adenoscan®, or an Adenoscan® substitute, purchased through an Astellas-authorized company for use as an adjunct therapy to MPI.

36. Said demand has resulted in an anticompetitive effect by precluding plaintiff LRMC and others from procuring adenosine at a more beneficial price from competing manufacturers of adenosine (after expiration of the '877 Patent), when such manufacturers could legitimately have entered products into the market for the plaintiff and others to purchase for use in continuous adenosine infusion procedures.

**Affected Commerce**

37. The unilateral demand by defendant Astellas that plaintiff LRMC and others use only the defendant's Adenoscan® in MPI procedures has resulted in an increased cost to the plaintiff and others compared to the cost of purchasing generic adenosine after the expiration of the '877 Patent.

## CLASS ACTION ALLEGATIONS

38. This action seeks exclusively monetary and equitable relief for defendant Astellas' violation of the federal Sherman Antitrust Act, federal Clayton

Antitrust Act, State of Florida antitrust laws, and State of Florida tort law. Plaintiff LRMC seeks compensatory damages, punitive damages, actual damages, actual damages trebled, attorneys' fees, a declaration that the defendant's behavior is unlawful, and an injunction of the defendant's behavior for each class member for defendant Astellas' wrongful conduct as alleged herein.

39. Certification under Rule 23(b)(2) Fed.R.Civ.P. is proper.

40. Certification under Rule 23(b)(3) Fed.R.Civ.P. is proper.

41. Plaintiff LRMC seeks certification of a national class action against defendant Astellas for the anticompetitive and other wrongful conduct alleged in this Complaint. The plaintiff class consists of the following:

> All health care providers who would have used adenosine sold by a provider other than defendant Astellas for myocardial perfusion imaging (MPI) after May 18, 2009, but for the defendant's claim that generic adenosine could not be used for this procedure (even though it was available in the market), and who did purchase adenosine from the defendant.
>
> a) Those health care providers referenced above still in business on the date that final judgment is entered in this action;
>
> b) Those health care providers referenced above who do not have pending action against defendant Astellas, on the date of the Court's certification order, any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein;
>
> c) Health care providers are excluded from the class as to defendant Astellas who have previously obtained a

judgment; or settled any claims against the defendant concerning the type claims asserted herein; or have previously executed releases releasing any such claims against the defendant; or who have signed any arbitration agreement with the defendant concerning settlement claims.

42.   Numerosity – On information and belief, there are several thousand health care providers utilizing defendant Astellas' method of adenosine administration. A substantial number of health care providers have been forced to agree to purchase adenosine for patient testing and treatment from the defendant, rather than from alternative suppliers, due to the defendant's anticompetitive conduct. Because defendant Astellas has exclusive control of such information, plaintiff LRMC reserves its right to amend its allegations following completion of discovery. Given the scope of the defendant's business in the United States, it is clear that the members of the Class are so numerous that joinder is impracticable and the disposition of claims in a class action will provide substantial benefits to both the parties and this Court.

43.   Commonality – Since plaintiff LRMC and other members of the Class were prevented from using an available generic version of adenosine, at substantial savings, as an adjunct to myocardial perfusion imaging by the anticompetitive behavior of defendant Astellas in attempting to effectively enforce an expired patent in violation of federal and Florida antitrust laws, there are questions of law and fact

common to the Class. Such common questions of law and fact predominate over any individual questions affecting Class members.

44.    Typicality – Plaintiff LRMC has the same interests in this matter as all the other members of the Class, and the plaintiff's claims are typical of all members of the Class because: (a) the claims originate from the same practices on the part of defendant Astellas and its acts in furtherance thereof; and (b) plaintiff LRMC and all Class members have sustained damages from defendant Astellas' anticompetitive conduct.

45.    Adequacy of Representation – Plaintiff LRMC's claims are aligned with the interests of the absent members of the Class such that the Class claims will be prosecuted with diligence and care by the plaintiff as representative of the Class. Plaintiff LRMC is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of class litigation. Plaintiff LRMC will fairly and adequately represent the interests of Class and does not have interests adverse to the Class. Plaintiff LRMC has no relationship with defendant Astellas except as a customer. Plaintiff LRMC's interests are antagonistic to the interests of defendant Astellas, and the plaintiff will vigorously pursue the claims of the Class.

## COUNT I
## Unlawful Tying

46.    Plaintiff LRMC re-alleges all prior paragraphs of the Complaint as if set forth here in full.

47.    Defendant Astellas' conduct in conditioning the granting of a license to perform continuous adenosine infusion as an adjunct to MPI, on the purchase of Adenoscan® , constitutes an illegal tying agreement and is a *per se* violation of Section One of the Sherman Act, 15 U.S.C. § 1; or, in the alternative, is unlawful under the rule of reason, in that any purported pro-competitive justification for the tie is substantially outweighed by the anticompetitive effects in the adenosine market.    Moreover, any purported pro-competitive justification can be achieved through alternative means less restrictive of competition.

48.    The tying product is the method of continuous adenosine infusion for inducing pharmacologic stress during MPI procedures.    The tied product is adenosine.

49.  Defendant Astellas has leveraging/tying power in the tying product, as reflected by its market share of approximately 90%, control of the '296  Patent for that product, and the perception and recognition by providers and consumers that the '296 patented process constitutes the medically accepted standard of care for inducing pharmacologic stress.

50.   Defendant Astellas also has been able to attain and retain substantial market power in the tied product, adenosine, with a market share of approximately 60%.   The defendant charges more than 450% of the competitive market price for the tied product and prevents purchasers from purchasing the tied product from actual and potential competitors.   As a result, the majority of the adenosine market has been foreclosed to actual and potential competitors.

51.   The relevant geographic market is the United States of America and its territories.

52.   The license to perform continuous adenosine infusion and the adenosine product used for that procedure constitute separate and distinct products. Customers demand the two products separately, and a number of providers of the tied product sell the tied product separately.

53.   Defendant Astellas' tying of a license for performance of continuous adenosine infusion administrations to the purchase of the defendant's Adenoscan® has resulted in coerced agreements between the defendant and its health care provider customers to purchase the defendant's adenosine products rather than adenosine from competing suppliers.   This unlawful tying by Defendant Astellas has unlawfully restrained free competition in the market for adenosine and eliminated the customer's ability to choose its own supplier of the drug.

54.   If not for defendant Astellas' behavior in tying the purchase of its

17

Adenoscan® product to the license to perform continuous adenosine infusion, plaintiff LRMC and other health care providers throughout the country could have purchased generic adenosine.

55.    Defendant Astellas' tying behavior has had, and will continue to have, substantial anticompetitive effects in the market for adenosine, and will substantially foreclose the adenosine market to all generic adenosine suppliers.  By substantially foreclosing the adenosine market to competition, the defendant can unilaterally raise prices and reduce output, thereby significantly harming consumer and patient welfare.

56.    A substantial amount of interstate commerce has been affected, and will continue to be affected, in the market for adenosine due to defendant Astellas' tying conduct.

57.    As a direct and proximate result of Defendant Astellas' tying conduct, plaintiff LRMC has suffered, and will continue to suffer, substantial injury.

WHEREFORE, plaintiff LRMC demands judgment against defendant Astellas in such an amount of compensatory damages as the jury deems reasonable and may award, plus interest and cost, along with reasonable attorneys' fees and actual damages trebled.

## COUNT II
### Exclusive Dealing

58.     Plaintiff LRMC re-alleges all prior paragraphs of the Complaint as if set forth here in full.

59.     As alleged above, as evidenced by its written and oral communications, defendant Astellas requires plaintiff LRMC, and all of the defendant's numerous health care provider customers who wish to perform continuous infusion of adenosine as an adjunct to MPI procedures for cardiac patients, to agree to purchase their needed supplies of adenosine exclusively from defendant Astellas and not from competing adenosine providers, as they would prefer to do, in violation of Section One of the Sherman Act, 15 U.S.C. § 1, and Section Three of the Clayton Act, 15 U.S.C. § 14.

60.     Defendant Astellas receives revenues of more than 100 million dollars annually from adenosine customers nationwide, remitted to its headquarters in Illinois.   Adenosine is shipped in commerce throughout the country, and the exclusive dealing agreements between Astellas and its customers occur in the course of interstate commerce and have a substantial effect on that commerce.

61.     As a result of defendant Astellas' coerced exclusive dealing agreement, plaintiff LRMC has been forced to pay hundreds of thousands of dollars more each year for adenosine than it otherwise would have paid to competing

providers. Moreover, as a result of the exclusive dealing agreement, actual and potential competitors in the adenosine market have been foreclosed from selling to the plaintiff and other of defendant's customers, which represent a majority of the purchasers of adenosine. Competition in the adenosine market has been unreasonably and dramatically reduced nationwide, and that market is controlled by defendant Astellas, which has the power to control price and exclude competition in the market for adenosine.

62. Furthermore, as a result of defendant Astellas' unlawful conduct, health care costs among plaintiff LRMC's patients, within this District, and nationwide, some of which are reimbursed or paid by the federal and state governments, have increased unreasonably above what they would have been in a competitive market.

WHEREFORE, plaintiff LRMC demands judgment against defendant Astellas in such an amount of compensatory damages as the jury deems reasonable and may award, plus interest and cost, along with reasonable attorneys' fees and actual damages trebled.

## COUNT III
## Attempt to Monopolize

63. Plaintiff LRMC re-alleges all prior paragraphs of the Complaint as if set forth here in full.

64.     Defendant Astellas has attempted to monopolize the market for adenosine throughout the United States, and has attempted to monopolize the submarket for adenosine used as an adjunct to MPI, nationwide, in violation of Section Two of the Sherman Act, 15 U.S.C. § 2.

65.     The relevant product market is adenosine.   The relevant product submarket, recognized by Astellas, the health care community, and purchasers, is adenosine administered as an adjunct to MPI.

66.     The relevant geographic market is the United States of America and its territories.

67.     Defendant Astellas possesses approximately a 60% market share of the sale of adenosine, nationwide.   Defendant Astellas possesses approximately a 90% market share of the sale of adenosine as an adjunct to MPI, nationwide.

68.     As alleged above, defendant Astellas possesses a process patent for the administration of adenosine as an adjunct to MPI.   It refuses to grant or sell a license for that patent to any provider who does not purchase adenosine products from it.   Medical providers regard adenosine administered through the defendant's patented process as the necessary standard of medical care when there is an indication requiring the use of adenosine as an adjunct to MPI.

69.     As alleged above, defendant Astellas charges customers, such as plaintiff LRMC, 450% more for its adenosine than customers would pay for

21

adenosine from alternative providers. Defendant Astellas is able to control the cost for adenosine, and is able to foreclose competitors from customers for adenosine.

70.    Defendant Astellas specifically notified many customers, including plaintiff LRMC, in writing that they must purchase adenosine from defendant Astellas because the defendant alleged that it has an enforceable patent over the process for administering adenosine, even after the '877 Patent expired. Defendant Astellas also implied that such patent protection extended to the product, adenosine. Defendant Astellas also made reference to various patent infringement lawsuits it has filed regarding the use of adenosine sold by alternative suppliers.

71.    Defendant Astellas also wrote specifically to plaintiff LRMC, on two occasions, spelling out its claim for alleged process patent exclusivity and demanding that the plaintiff therefore must purchase adenosine only from it. In those letters, defendant Astellas specifically refused to grant a separate patent license for the MPI process, specifically refused to reduce its price to the market level for adenosine, and again specifically refused to "allow" the plaintiff to purchase adenosine from other suppliers.

72.    By refusing to separately license the '296 Patent to plaintiff LRMC and others, and insisting that purchasers who wished such a license purchase adenosine solely from it, defendant Astellas specifically intended to attain monopoly

power - the power to control price or exclude competition - in the market for adenosine and submarket for adenosine administered as an adjunct for MPI.

WHEREFORE, plaintiff LRMC demands judgment against defendant Astellas in such an amount of compensatory damages as the jury deems reasonable and may award, plus interest and cost, along with reasonable attorneys' fees and actual damages trebled.

## COUNT IV
### Florida Antitrust Act of 1980 (Unreasonable Restraint of Trade)

73.     Plaintiff LRMC re-alleges all prior paragraphs of the Complaint as if set forth here in full.

74.     There is a dangerous probability that defendant Astellas will successfully attain and retain monopoly power in the above-referenced market and submarket. This dangerous probability is demonstrated by defendant Astellas' high and sustaining market shares, by the perception in the health care community that use of defendant Astellas' process patent for administering adenosine is the medically accepted standard of care, which creates barriers to entry, and by defendant Astellas' threatening and misleading communications regarding its process patent and the alleged extension of the patent to the product, Adenoscan® .

75.     The existence of defendant Astellas' dangerous probability of successful monopolization also is demonstrated by its ability to successfully charge

450% of the market price for adenosine and generate over 100 million dollars in sales for its products.

76.   Defendant Astellas' attempt to monopolize has had a substantial effect on its shipment of adenosine in interstate commerce and has significantly damaged plaintiff LRMC, causing the plaintiff to remit hundreds of thousands of dollars more for adenosine than it otherwise would.   Defendant Astellas' monopolistic and exclusionary conduct also has caused the federal government to remit significant additional amounts of money for Medicare reimbursements in interstate commerce than it otherwise would.

77.   Defendant Astellas' intention in tying the licensing for performance of continuous adenosine infusion to the purchase of Adenoscan® was to control the price and/or supply of adenosine in the market.

78.   A substantial portion of defendant Astellas' behavior constituting the violations alleged above occurred in the State of Florida and has had a substantial impact on trade or commerce within the State of Florida.

WHEREFORE, plaintiff LRMC demands judgment against defendant Astellas in such an amount of compensatory damages as the jury deems reasonable and may award, plus interest and cost, along with reasonable attorneys' fees and actual damages trebled.

## COUNT V
## Florida Antitrust Act of 1980 (Attempted Monopolization)

79.    Plaintiff LRMC re-alleges all prior paragraphs of the Complaint as if set forth here in full.

80.    As alleged above, defendant Astellas' conduct constitutes attempted monopolization, which is a *per se* violation of F.S.A. § 542.19, or in the alternative, violations of F.S.A. § 542.19 under the rule of reason.

81.    As alleged above, defendant Astellas possesses a monopoly of the market of adenosine for MPI procedures in that the defendant controls approximately 90% of said market.

82.    Defendant Astellas has willfully maintained said monopoly of the market of adenosine for MPI procedures.   Furthermore, the defendant has maintained its monopoly in an exclusionary manner by tying the license to perform continuous adenosine infusion to purchase of its Adenoscan® product, even after the patent over that product expired.

83.    Defendant Astellas' behavior has resulted in decreased competition in the market of adenosine for MPI procedures.

84.    A substantial portion of defendant Astellas' behavior constituting the violations alleged above occurred in the State of Florida and has had a substantial impact on trade or commerce within the State of Florida.

WHEREFORE, plaintiff LRMC demands judgment against defendant Astellas in such an amount of compensatory damages as the jury deems reasonable and may award, plus interest and cost, along with reasonable attorneys' fees and actual damages trebled.

## COUNT VI
### Tortious Interference with Prospective Economic Advantage

85.     Plaintiff LRMC re-alleges all prior paragraphs of the Complaint as if set forth here in full.

86.     Defendant Astellas has conditioned the granting of license to perform continuous adenosine infusion for MPI on the purchase of its Adenoscan® product, as alleged above.

87.     Defendant Astellas' conduct in contracting and licensing with their customers constitutes a tortious interference with prospective economic advantage of plaintiff LRMC.

88.     Plaintiff LRMC has the opportunity to contract with another company to purchase generic adenosine at substantial savings over the price of defendant Astellas' Adenoscan® .

89.     Defendant Astellas knew of plaintiff LRMC's opportunity and ability to obtain generic adenosine from other manufacturers at a price beneficial to the plaintiff, as evidenced by the defendant's letter to the plaintiff stating that it would

not permit use of adenosine obtained from other suppliers in conjunction with its patented method of administration.

90.     Defendant Astellas' interference with contractual relations between plaintiff LRMC and generic adenosine manufacturers is unjustified. Any purported pro-competitive justification for the tie is substantially outweighed by the anticompetitive effects in the adenosine market.

91.     Defendant Astellas' conduct resulted in an economic loss to the Plaintiff.

WHEREFORE, plaintiff LRMC demands judgment against defendant Astellas in such an amount of compensatory damages as the jury deems reasonable and may award, plus interest and cost, along with punitive damages and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, plaintiff LRMC, individually and on behalf of the Class, respectfully demands monetary and equitable relief, to include compensatory damages, punitive damages, actual damages, actual damages trebled, attorneys' fees, a declaration that the defendant's behavior is unlawful, and an injunction of the defendant's behavior for the plaintiff and each class member, against defendant Astellas for its wrongful conduct as alleged herein.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES TRIABLE IN THIS CAUSE.

Respectfully submitted this _____ day of _____, 2010.

_____
W. DANIEL "DEE" MILES, III *
TIMOTHY R. FIEDLER (Fla. Bar No. 0301190)
ARCHIE I. GRUBB, II *
*Attorneys for Plaintiff*
**BEASLEY, ALLEN, CROW
METHVIN, PORTIS, & MILES, P.C.**
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343
*dee.miles@beasleyallen.com*
*tim.fiedler@beasleyallen.com*
*archie.grubb@beasleyallen.com*


**OF COUNSEL:**

STEPHEN R. SENN (Fla. Bar No. 0833878)
*Attorney for Plaintiff*
**PETERSON & MYERS, P.A.**
P.O. Box 24628
Lakeland, FL 33802-4628
(863) 683-6511
*ssenn@petersonmyers.com*


*pro hac vice* pending

28

SERVE DEFENDANT BY CERTIFIED MAIL AT:

Astellas US, LLC
C/O CORPORATION SERVICE COMPANY
2711 Centerville Road, Suite 400
Wilmington, DE 19808

Astellas Pharma US, Inc.
C/O CORPORATION SERVICE COMPANY
2711 Centerville Road, Suite 400
Wilmington, DE 19808