UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAKELAND REGIONAL MEDICAL CENTER,
INC.,

   Plaintiff,

v.          Case No. 8:10-cv-2008-T-33TGW

ASTELLAS US LLC, and ASTELLAS
PHARMA US, INC.,

   Defendants.

_____/

## ORDER

  This matter comes before the Court pursuant to Astellas's Motion to Dismiss (Doc. # 16), which was filed on November 19, 2010. Lakeland Regional Medical Center filed a Response in Opposition to the Motion (Doc. # 34) on January 21, 2011. Astellas filed a Reply Memorandum (Doc. # 42) on February 11, 2011. For the reasons that follow, the Court denies the Motion to Dismiss in this antitrust case.

## I. Factual and Procedural Background

  Lakeland Regional, a "full-service hospital," is a not-for-profit Florida corporation with its headquarters in Lakeland, Florida. (Doc. # 11 at ¶ 7). Defendants Astellas US, LLC and Astellas Pharma US, Inc. (collectively, "Astellas") are Delaware corporations with headquarters in Deerfield, Illinois. Id. at ¶ 8. Astellas is the exclusive licensee of two patents involving the administration of

adenosine to patients undergoing cardiac stress tests. Lakeland Regional alleges that Astellas has engaged in unlawful, anticompetitive, monopolistic, and exclusionary activity with respect to adenosine in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, the Clayton Antitrust Act, 15 U.S.C. § 14, Florida antitrust law, and Florida common law.

### A.    <u>Stress Tests and Use of Adenosine</u>

Physicians use a test known as myocardial perfusion imaging to diagnose a condition known as cardiac artery disease, one of the leading causes of death in the United States. <u>Id.</u> at ¶ 9.  Myocardial perfusion imaging is usually done while the patient is placed under "stress" in order to maximize the accuracy of the test. <u>Id.</u> at ¶ 10.  Physicians induce stress by requiring patients to exercise on a treadmill. <u>Id.</u>  When patients are unable to exercise on a treadmill, physicians create "pharmacological stress" through the administration of adenosine. <u>Id.</u>  Adenosine is a naturally occurring compound that induces the dilation of blood vessels. <u>Id.</u> at ¶ 12.

Even when patients are capable of exercise, physicians often use adenosine to further stress the heart, in order to increase the accuracy of the stress test. <u>Id.</u>  Administration

of adenosine is the medically recognized standard of care when pharmacologic stress is required to perform myocardial perfusion imaging. Id. When adenosine is required for myocardial perfusion imaging, more than 90% of the adenosine is suppled by Astellas. Id. Further, adenosine is administered to cardiac patients in more than 90% of cardiac stress tests conducted nationwide. Id. In addition to stress tests, adenosine is also used to treat a condition known as paroxysmal supraventricular tachycardia. Id.

Two patents are implicated here. The patents are owned by King Pharmaceuticals, Inc., but Astellas is the exclusive licensee of such patents: the 5,070,877 patent and the 5,731,296 patent. Id. at ¶¶ 17-18. The '877 Patent relates solely to the use of Astellas's adenosine product "Adenoscan®," for its vasodilative properties when used in conjunction with myocardial imaging. Id. at ¶ 18. The '877 Patent expired on May 18, 2009. Id. The '296 Patent covers a method of continuous adenosine infusion, and it will expire on March 24, 2015. Id. Both patents encompass the process of using adenosine during myocardial imaging. The patents do not cover Astellas's adenosine product, because adenosine is unpatentable. Id. at ¶ 22.

Several other companies sell an adenosine product that is not meaningfully distinguishable from Astellas's adenosine product. Id. Astellas charges $8.05 per ml. of Adenoscan, compared with $1.76 per ml. for generic adenosine-- approximately 450% more per unit than its generic counterpart. Id. at ¶ 23.

It is Astellas's position that the '296 Patent grants Astellas exclusivity for the only medically recognized process to administer adenosine during myocardial perfusion imaging, even after the expiration of the '877 Patent. Id. at ¶ 19. The majority of all myocardial perfusion imaging stress tests are administered using the process patented by the '296 Patent. Id. No other medically recognized process for inducing stress for myocardial perfusion imaging is available. Id.

**B.    Astellas's Communications with Lakeland Regional**

On July 31, 2008, Astellas transmitted a letter to Lakeland Regional indicating that Lakeland Regional must purchase Adenoscan for use in myocardial perfusion imaging procedures after expiration of the '877 Patent and that use of generic adenosine during such procedures would constitute infringement of the '296 Patent. Id. at ¶ 24. Among other things, the letter stated:

-4-

> [S]ale of . . . an Adenoscan® substitute for that
> use [in myocardial perfusion imaging] is currently
> protected by two independent United States patents
> . . . . When Adenoscan® is purchased from Astellas,
> the purchaser is given permission to use the drug
> as an adjunct for MPI.  But when adenosine from an
> unauthorized source is used for MPI . . . the
> seller and the user are infringing both the '877
> and the '296 patents and thus could be liable for
> patent infringement . . . . [E]ven after May 18,
> 2009, only Astellas . . . will be legally permitted
> to use adenosine as an adjunct for MPI.

Id. at ¶ 26.

In a letter dated September 14, 2009, Astellas explained

to Lakeland Regional:

> While there is no patent that covers the
> *composition*, adenosine, this *method of use* patent
> precludes the use of generic adenosine for MPI as a
> substitute for Adenoscan®.  Astellas is the only
> party that can authorize the patented use of an
> adenosine infusion for MPI studies.  Such
> permission is **only** granted when Adenoscan® is
> purchased . . . from Astellas.

Id. at ¶ 28 (emphasis in original).

### C.   Lakeland Regional's Complaint

Lakeland Regional contends that Astellas "has attempted

to effectively extend its '877 Patent beyond its expiration

date by requiring the use of only Adenoscan®, or an Adenoscan®

substitute, purchased through an Astellas-authorized company

for use as an adjunct therapy to MPI." Id. at ¶ 35.  Lakeland

Regional characterizes Astellas's conduct as "anticompetive."

Id. at ¶ 36.

Lakeland Regional initiated this action against Astellas on September 13, 2010, and filed an amended class action complaint on October 19, 2010. (Doc. ## 1, 11). Lakeland Regional's amended complaint arrays the following counts against Astellas: unlawful tying (count one), exclusive dealing (count two), attempted monopolize (count three), unreasonable restraint of trade (count four), attempted monopolization (count five), and tortious interference with a prospective economic advantage(count six).

Astellas responded to the amended complaint by filing a 55 page Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 16). Generally, Astellas asserts that dismissal is warranted because Lakeland Regional lacks standing, has failed to demonstrate an injury in fact, and has failed to state a claim upon which relief may be granted. The Court will address these arguments and others below.

## II.  <u>Legal Standard</u>

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of</u>

Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, in Twombly, an antitrust case, the Supreme Court cautioned:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

This Court's analysis is confined to the four corners of the complaint.  Astellas has filed an assortment of documents as exhibits to the Motion to Dismiss.  The Court has not reviewed the exhibits and is therefore not required to convert the Motion to Dismiss into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.  Without the benefit of discovery, it would be premature for the Court to conduct summary judgment analysis.

Furthermore, the Eleventh Circuit has cautioned that "Rule 12(b)(6) dismissals are particularly disfavored in fact-intensive antitrust cases." Spanish Broad. Sys. v. Clear Channel Commc'ns, 376 F.3d 1065, 1070 (11th Cir. 2004)(citations omitted).  Moreover, as explained in Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1502 (11th Cir. 1985), "'summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.'" (quoting Norfolk Monument Co. v. Woodlawn Mem'l Gardens, 394 U.S. 700, 704 (1969)).

III. **Analysis**

   A.   **Standing**

As a threshold matter, this Court must determine whether Lakeland Regional has standing to bring this action. Pierson v. Orlando Reg'l Healthcare Sys., Inc., 619 F. Supp. 2d 1260, 1274 (M.D. Fla. 2009).  Astellas challenges Lakeland Regional's standing by arguing that Lakeland Regional has not alleged an Article III "injury in fact," has not alleged an "antitrust injury" and has not satisfied the Illinois Brick rule.

### 1.  **Injury in Fact**

As explained in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992), "[T]he irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an injury in fact . . . . [s]econd, there must be a causal connection between the injury and the conduct complained of . . . . [t]hird, it must be likely, as opposed to mere speculative, that the injury will be redressed by a favorable decision." Id. (internal citations and quotation marks omitted).  Astellas contends that Lakeland Regional lacks Article III "case or controversy" standing because Lakeland Regional has failed to allege an "injury in fact." Under Lujan, an injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Id. at 560 (internal citations and quotation marks omitted).

The Court finds that Lakeland Regional has alleged an injury in fact.  In its amended complaint, Lakeland Regional alleges that it has suffered monetary damages resulting from Astellas's alleged exclusive dealing and unlawful tying of its patented process to its unpatentable adenosine drug.  Lakeland Regional also alleges that Astellas has specifically threatened to sue Lakeland Regional if Lakeland Regional purchases alternatives to Adenoscan.

At this stage of the proceedings, the Court would be mistaken to dismiss the amended complaint for lack of Article III standing when the complaint alleges that Lakeland Regional has suffered a specific economic injury due to Astellas's alleged conduct and that Astellas has threatened to sue Lakeland Regional for patent infringement concerning Astellas's unpatentable drug.  Astellas relies on a bounty of cases that affirm the dismissal of antitrust actions due to lack of standing.  However, upon close inspection, these cases were decided at the summary judgment stage.[1]  The Court will not make the misstep of deciding the intricate and factually complex matters before it prematurely.

Satisfied that Lakeland Regional meets the standing requirements of Article III, the Court must determine whether Lakeland Regional has suffered an antitrust injury and whether Lakeland Regional's amended complaint satisfies the <u>Illinois Brick</u> rule.  "Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust

---

[1] <u>See</u> E.g., <u>Midwestern Waffles, Inc. v. Waffle House, Inc.</u>, 734 F.2d 705 (11th Cir. 1984) and <u>Krypta v. McDonald's Corp.</u>, 671 F.2d 1282 (11th Cir. 1982).  Both cases involved review of antitrust claims at the summary judgment stage.

action." <u>Assoc. Gen. Contractors of Cal. v. Cal. State Council</u>, 459 U.S. 519, 535 at n.31 (1983).

### 2. <u>Antitrust Injury</u>

As explained by the Eleventh Circuit in <u>Gulf States Reorganization Group, Inc. v. Nucor Corp.</u>, 466 F.3d 961, 966 (11th Cir. 2006), in addition to the Article III standing requirements that apply to all federal plaintiffs, those "challenging violations of the antitrust laws must also show that they have suffered [an] 'antitrust injury' or 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" (citing <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477, 489 (1977)).

The Eleventh Circuit defined the parameters of an antitrust injury in <u>Midwestern Waffles</u>: "The injury must reflect the anticompetitive effect of either the violation of antitrust law or of the anticompetitive acts made possible by the violation, and it should be the type of loss which a violation of antitrust law would be likely to cause." 734 F.2d at 710. To have suffered an antitrust injury, "a person must be one against whom anticompetitive activity is directed, and not one who has merely suffered indirect, secondary, or remote injury." <u>Id.</u>

Although both parties have submitted voluminous pleadings, the Court must restrict its analysis to the complaint to determine whether Lakeland Regional has asserted an antitrust injury.  In the amended complaint, Lakeland Regional claims that Astellas perpetrated an illegal tying arrangement.  According to the amended complaint, Astellas has tied the purchase of an unpatented product with multiple uses to the patented license to perform a medical procedure. Lakeland Regional also alleges that Astellas has excluded potential competitors from the market for the tied product.

The amended complaint alleges a antitrust injury within its four corners.  Without delving into whether Lakeland Regional has evidence necessary to support its amended complaint and without considering the voluminous documents attached to Astellas's Motion, the Court determines that Lakeland Regional has adequately alleged an antitrust injury in its amended complaint.

### 3.   <u>Illinois Brick Standing</u>

At this preliminary stage, the Court is also satisfied that Lakeland Regional's amended complaint does not run afoul of the standards set forth in <u>Illinois Brick v. Illinois</u>, 431 U.S. 720 (1977) curtailing relief in indirect injury cases. There, the Court addressed the issue of whether plaintiffs asserting "pass-on" damages have standing to bring an

antitrust action under the Clayton Act.  The plaintiffs were government entities alleging that defendant brick manufacturers conspired to engage in price fixing, thus raising the price of cement bricks and eventually leading to inflation of the prices paid for finished government buildings.  The Court determined that the plaintiffs were "indirect purchasers of concrete block, which passes through two separate levels in the chain of distribution before reaching [the plaintiffs]." Id. at 726.  The Court ruled that the plaintiffs lacked standing because "[t]he legislative purpose in creating a group of private attorneys general to enforce the antitrust laws . . . is better served by holding direct purchasers to be injured to the fill extent of the overcharge paid by them than by attempting to apportion the overcharge among all that may have absorbed a part of it." Id. at 746 (citations omitted).  Stated another way:

> An antitrust violation may be expected to cause ripples of harm to flow through the Nation's economy; but despite the broad wording of Section 4 [of the Clayton Act] there is a point beyond which the wrongdoer should not be held liable.  It is reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property.

Assoc. Gen. Contractors of Cal., 459 U.S. at 534-35.

The Court has recognized several rationales for the direct purchaser rule of _Illinois Brick_: (1) it eliminates the complication of apportioning overcharges among purchasers in the chain of distribution; (2) it eliminates a pass-on defense for manufacturers, which would reduce the effectiveness of Clayton Act actions by diminishing the recovery available to plaintiffs; and (3) it eliminates the risk of multiple recoveries.  _Kan. v. Utilicorp United, Inc._, 497 U.S. 199, 206-207 (1990).

However, as with many "brightline" rules, the Supreme Court has carved out exceptions to the _Illinois Brick_ direct purchaser rule and has limited application of _Illinois Brick_ under certain factual scenarios.  _See_ _UtiliCorp_, 497 U.S. at 216 ("The rationales underlying _Hanover Shoe_ and _Illinois Brick_ will not apply with equal force in all cases.").  This Court finds _Lowell v. Am. Cyanamid Co._, 177 F.3d 1228 (11th Cir. 1999) instructive.  There, the district court dismissed an antitrust action under _Illinois Brick_ due to the plaintiffs' failure to join various cyanamid distributors. The plaintiffs (a group of farmers) were not direct purchasers of the crop protection product at issue in the case, rather, the farmers purchased the products from a distributor.  The Eleventh Circuit reversed the dismissal of the case holding

"<u>Illinois Brick</u> has no application in this case." 177 F.3d at 1229.

The <u>Lowell</u> court explained:

> <u>Illinois Brick</u> was an extension of the Court's earlier prohibition against the *defensive* use of passing on in <u>Hanover Shoe, Inc. v. United Shoe Machinery, Corp.</u>, 392 U.S. 481, 491-94 (1968).  In concluding that the indirect government purchaser of a product may not sue distant manufacturers, <u>Illinois Brick</u> cited two rationales.  The first of these was that allowing offensive but not defensive use of pass-on would create a serious risk of multiple liability for defendants.  Even though an indirect purchaser had already recovered for all or part of an overcharge passed on to it, the direct purchaser would still recover automatically the full amount of the overcharge that the indirect purchaser had shown to be passed on. . . . Second, as in <u>Hanover Shoe</u>, the Court was worried about the uncertainties and difficulties in analyzing price and out-put decisions in the real economic world rather than an economist's hypothetical model and of the costs to the judicial system and the efficient enforcement of the antitrust laws of attempting to reconstruct those decisions in the courtroom.

<u>Lowell</u>, 177 F.3d at 1229 (internal quotation marks and citations omitted).   In <u>Lowell</u>, the Eleventh Circuit determined that the aforementioned rationales underpinning <u>Illinois Brick</u> did not apply to the facts presented because the complaint did not contain allegations of "passing on," there were "no problems of double recovery" (because only one illegal act was alleged) and there was "only one set of potential plaintiffs." 177 F.3d at 1230.   Furthermore, the

-15-

Eleventh Circuit determined that "the economic and legal complexities outlined in <u>Illinois Brick</u> [were] absent." <u>Id.</u>

Lakeland Regional's amended complaint contains allegations tending to describe direct purchase from Astellas, possibly eliminating the <u>Illinois Brick</u> inquiry. However, these allegations are somewhat tenuous. As to direct purchase, Lakeland Regional alleges: "Defendant Astellas has distributed and continues to distribute adenosine products valued in the millions of dollars annually from their headquarters in Illinois to plaintiff LRM's place of business in Florida, and to other purchasers throughout the country. Payments are remitted from across the country to the defendant." (Doc. # 11 at ¶ 6) Lakeland Regional also alleges that Astellas "manufactures and sells" its adenosine products. <u>Id.</u> at ¶ 22. Further Lakeland Regional alleges that it (along with other healthcare providers) has been forced to "agree to purchase their needed supplies of adenosine from defendant Astellas and not from competing adenosine providers, as they would prefer to do." <u>Id.</u> at ¶ 59.[2]

_____

[2] The Court rejects Astellas's argument, pursuant to <u>Warren Gen. Hosp. v. Amgen, Inc.</u>, Case No. 09-cv-4935, 2010 WL 2326254 (D.N.J. June 7, 2010), that Lakeland Regional's allegations are insufficient. In <u>Warren</u>, the court dismissed the antitrust case pursuant to <u>Illinois Brick</u> because the complaint failed to allege direct purchase, alleged that the product at issue was purchased through a wholesaler, and
(continued...)

Although these allegations do not use the words "direct purchase" the Court accepts them as alleging direct purchase from Astellas at this preliminary stage of the proceedings.[3] However, even if these allegations were insufficient to support the direct purchase requirement of Illinois Brick, the Court is still justified in denying the Motion to Dismiss to the extent it is based on Illinois Brick because Lakeland Regional has argued that Illinois Brick is inapplicable, as was the case in Lowell.   In addition, Lakeland Regional correctly points out that Illinois Brick applies only to antitrust damages and does not stand as a bar to any party seeking injunctive relief and attorney's fees, which Lakeland Regional seeks in its amended complaint.

---

[2](...continued)
attached to the complaint was a copy of the wholesale agreement.   In stark contrast, Lakeland Regional's amended complaint does not mention a wholesaler.   If it is Astellas's position that Lakeland Regional purchases its adenosine product from a wholesaler, Astellas may present that argument, along with evidence in support of such argument, in a motion for summary judgment.

[3] Furthermore, neither Astellas nor Lakeland Regional attempts to categorize the allegations contained in the amended complaint as a "horizontal" or a "vertical" antitrust violation.   In Lowell, the Eleventh Circuit indicated that Illinois Brick does not apply to certain vertical antitrust conspiracies: "The inapplicability of Illinois Brick to vertical conspiracies with no allegations of pass-on (what some have called the 'vertical conspiracy exception') has long been recognized." Lowell, 177 F.3d at 1231.

At this point, the Court is satisfied that Lakeland Regional is the proper plaintiff to bring this action, and it does not find that <u>Illinois Brick</u> is a bar to pursuing this action.   However, the parties are free to reassert their arguments during the summary judgment stage, after the completion of discovery.

B.   **Tying**

Astellas seeks dismissal of Lakeland Regional's federal and state law tying claims asserted under the Sherman Act, the Clayton Act, and Florida Statute Section 542.18, as asserted in counts one and four of the amended complaint.   The elements of a tying claim are:

> 1) that there are two separate products, a "tying" product and a "tied" product; 2) that those products are in fact "tied" together – that is, the buyer was forced to buy the tied product to get the tying product; 3) that the seller possesses sufficient economic power in the tying product market to coerce buyer acceptance of the tied product; and 4) involvement of a "not insubstantial" amount of interstate commerce in the market of the tied product.

<u>Thompson v. Metro. Multi-List, Inc.</u>, 934 F.2d 1566, 1574 (11th Cir. 1991)(internal citation omitted).

Astellas does not contend that Lakeland Regional failed to allege the essential elements for a tying claim in the amended complaint.   Rather, Astellas argues that Lakeland Regional's tying claims are subject to dismissal because

Lakeland Regional failed to allege "plausible relevant markets, two separate and distinct product markets, or anticompetitive effects in the tied product market." (Doc. # 16 at 50).

As explained in <u>Thompson</u>, "antitrust law is concerned with abuses of power by private actors in the marketplace." 934 F.2d at 1572.  "The plaintiff bears an initial burden of demonstrating that the alleged agreement produced adverse, anti-competitive effects within the relevant product and geographic markets, i.e., market power." <u>Schering-Plough Corp. v. FTC</u>, 402 F.3d 1056, 1065 (11th Cir. 2005).

Astellas contends that Lakeland Regional cannot prove market power because the FDA has not approved any drug other than Astellas's adenosine drugs for use in myocardial perfusion imaging.  In addition, Astellas argues that Lakeland Regional cannot show that the patented license and the unpatentable adenosine product are separate products. Furthermore, Astellas remarks that Lakeland Regional cannot prove anticompetitive effects.  However, Lakeland Regional adequately alleges:

> Defendant Astellas has monopoly power - the power
> to control price or exclude competition - in the
> market for adenosine used in MPI in the United
> States . . . .  The defendant also controls greater
> than 60% of sales of adenosine for all purposes in
> the United States.  Defendant Astellas, plaintiff
> LRMC, and other health care providers recognize and

perceive that "adenosine used for MPI" is a relevant product submarket, which the defendant controls. The defendant, the plaintiff, and other health care providers also recognize and perceive that the process used to administer adenosine to patients during MPI is a relevant product market, which patent defendant Astellas controls in the United States. The relevant geographical market . . . is the United States of America and its territories. The patented process used to perform continuous adenosine infusion in MPI, and the unpatented product, adenosine, are recognized and perceived by providers and purchasers as two distinct products.

(Doc. # 11 at ¶¶ 13-16).

In <u>Gulfstream Park Racing Association v. Tampa Bay Downs, Inc.</u>, 294 F. Supp. 2d 1291, 1306-07 (M.D. Fla. 2003), the court explained, "In constructing a product market, an expert is to identify producers that provide customers of a defendant firm . . . with alternative sources for the defendant's product or services." This case has not reached the stage of the proceedings where expert testimony may be elicited. The Court rejects Astellas's argument that Lakeland Regional must provide the contours of the relevant markets at the complaint stage. At this stage, Lakeland Regional is not required to come forward with any evidence to prove that the allegations in its complaint are true. Here, Lakeland Regional has set forth adequate allegations to sustain a tying claim against Astellas, particularly with respect to the definition of plausible relevant markets and anticompetitive effects.

For the same reasons, the Court also declines to dismiss Lakeland Regional's state tying claim. State antitrust claims are generally governed by Federal antitrust law, and Astellas has not asserted separate grounds for dismissal of the state law antitrust claims. "Florida antitrust law defers to federal interpretation of Section 1 of the Sherman Antitrust Act in interpreting what conduct violates Florida Statute Section 542.18." <u>Gulfstream Park Racing</u>, 294 F. Supp. at 1306, n.38; <u>see</u> <u>also</u> Florida Statute Section 542.32 ("It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable federal antitrust statutes. . . ."); <u>Levine v. Cent. Fla. Med. Affiliates, Inc.</u>, 72 F.3d 1538, 1556 n.20 (11th Cir. 1996)("the Florida courts held that the Florida legislature has, in effect, adopted as the law of Florida the body of anti-trust law developed by the federal courts under the Sherman Act.")(internal citation omitted).

### C.   **Exclusive Dealing**

In count two, Lakeland Regional asserts a claim for exclusive dealing under Section 1 of the Sherman Act and Section 3 of the Clayton Act. In an effort to vanquish this claim, Astellas asserts four distinct arguments. First, Astellas reasserts its argument that "Lakeland Regional has

-21-

not alleged injury-in-fact, antitrust standing, or <u>Illinois Brick</u> standing." (Doc. # 16 at 40).  However, the Court has determined that Lakeland Regional has alleged an injury-in-fact and has otherwise established standing to assert its antitrust claims.  Accordingly, Astellas's first argument is unavailing.

Second, Astellas argues that Lakeland Regional's exclusive dealing count is "simply a re-packaging of its defective tying theory." <u>Id.</u> at 51.  The Court rejects this argument because, as noted above, the Court has declined to dismiss Lakeland Regional's tying claims and does not find that such tying claims are "defective."  Similarly, Astellas contends that the exclusive dealing count should be dismissed because Lakeland Regional has failed to "allege a plausible relevant market in which Adenoscan competes;" however, as noted above, the Court has determined that Lakeland Regional's market allegations are sufficient.

Fourth, Astellas argues that the exclusive dealing count must be dismissed because it fails the "rule of reason."  As explained in <u>Levine</u>:

> Under the rule of reason, the test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition.  Rule of reason analysis requires the plaintiff to prove (1) an anticompetitive effect of the defendant's conduct

> on the relevant market, and (2) that the conduct
> has no procompetitive benefit or justification. In
> order to prove an anticompetitive effect on the
> market, the plaintiff may either prove that the
> defendant's behavior had an actual detrimental
> effect on competition, or that the behavior had the
> potential for genuine adverse effects on
> competition. In order to prove the latter, the
> plaintiff must define the relevant market and
> establish that the defendants possessed power in
> that market.

Levine, 72 F.3d at 1551 (internal citations omitted). In

Spanish Broadcasting Systems of Florida, the Eleventh Circuit

clarified that "in alleging the anticompetitive effect of the

defendant's conduct, an antitrust plaintiff must show harm to

competition rather than to competitors. That is, the

anticompetitive effects are measured by their impact on the

market rather than by their impact on competitors." 376 F.3d

at 1072. (internal citations omitted).

The Court is satisfied that Lakeland Regional has

properly asserted its exclusive dealing claim. Among other

allegations, Lakeland Regional alleged in the amended

complaint:

> [A]s a result of the exclusive dealing agreement,
> actual and potential competitors in the adenosine
> market have been foreclosed from selling to the
> plaintiff and other of defendant's customers, which
> represent a majority of the purchasers for
> adenosine. Competition in the adenosine market has
> been unreasonably and dramatically reduced
> nationwide, and that market is controlled by
> defendant Astellas, which has the power to control
> price and exclude competition in the market for
> adenosine.

(Doc. # 11 at ¶ 61).   Lakeland Regional also alleges, "as a result of defendant Astellas's unlawful conduct, health care costs among plaintiff LRMC's patients, within this District and nationwide, have increased unreasonably above what they would have been in a competitive market." Id. at ¶ 62. Nothing so far presented to the Court persuades the Court that Lakeland Regional's claim fails the rule of reason. Accordingly, the Court declines to dismiss Lakeland Regional's exclusive dealing count at this stage of the proceedings.

**D.   Attempt to Monopolize**

"A patent gives its owner the right to grant licenses, if it so chooses, or it may ride its wave alone until the patent expires." Schering-Plough Corp., 402 F.3d at 1067.  "What patent law does not do, however, is extend the patentee's monopoly beyond its statutory right to exclude." Id.  In this case, Lakeland Regional alleges in count three that Astellas has attempted to monopolize in violation of Section 2 of the Sherman Act, which states:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or both said punishments, in the discretion of the court.

15 U.S.C. § 2.  Likewise, in count five, Lakeland Regional alleges that Astellas has attempted to monopolize under Florida Statute Section 542.19, which states, "It is unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce in this state." <u>Id.</u>

The Eleventh Circuit has ruled that, "to establish a violation of Section 2 for attempted monopolization, a plaintiff must show (1) an intent to bring about a monopoly and (2) a dangerous possibility of success." <u>Levine</u>, 72 F.3d at 1555 (internal citation omitted).  The Eleventh Circuit has further explained that "to have a dangerous probability of successfully monopolizing a market the defendant must be close to achieving monopoly power.  Monopoly power is the power to raise prices to supra-competitive levels or . . . the power to exclude competition in the relevant market either by restricting entry of new competitors or by driving existing competitors out of the market." <u>U.S. Anchor Mfg. v. Rule Indus.</u>, 7 F.3d 986, 994 (11th Cir. 1993).

The Court determines that Lakeland Regional's complaint allegations are sufficient to state a claim for attempted monopolization under the governing authorities.  Lakeland Regional alleges, among other things, that: "[D]efendant Astellas charges customers, such as plaintiff LRMC, 450% more

for its adenosine than customers would pay for adenosine from alternative providers.  Defendant Astellas is able to control the cost for adenosine, and is able to foreclose competitors from customers for adenosine." (Doc. # 11 at ¶ 69).

Lakeland Regional also submits:

> There is a dangerous probability that defendant Astellas will successfully attain and retain monopoly power in the . . . market and submarket. This dangerous probability is demonstrated by defendant Astellas' high and sustaining market shares, by the perception in the health care community that use of defendant Astellas' process patent for administering adenosine is the medically accepted standard of care, which creates barriers to entry, and by defendant Astellas' threatening and misleading communications regarding its process patent and the alleged extension of the patent to the product, Adenoscan®.

Id. at ¶ 74.

These allegations are sufficient at this juncture to survive the Motion to Dismiss.

## E.  **Tortious Interference with Prospective Economic Advantage**

Astellas has asserted generalized and specific arguments in pursuit of the dismissal of count six, for tortious interference with a prospective economic advantage.  Astellas suggests that the Court should decline to exercise supplemental jurisdiction over this state law claim.  The Court; however, has an unflagging duty to address the cases

before it, and it will not avoid this duty by declining to exercise jurisdiction over this count.

Astellas also maintains that Lakeland Regional has failed to properly allege two elements required to state a claim. The Florida Supreme Court has enumerated the following required elements to state such a claim: "(1) the existence of a business relationship . . . ; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." <u>Ethan Allen, Inc. v. Georgetown Manor, Inc.</u>, 647 So. 2d 812, 814 (Fla. 1994)(alteration in original).

Specifically, Astellas asserts that Lakeland Regional has failed to sufficiently plead elements three and four.  In the amended complaint Lakeland Regional alleges, inter alia, "Defendant Astellas' interference with contractual relations between plaintiff LRMC and generic adenosine manufacturers is unjustified.  Any purported pro-competitive justification for the tie is substantially outweighed by the anticompetitive effects in the adenosine market.  Defendant Astellas' conduct resulted in an economic loss to the Plaintiff." (Doc. # 11 at ¶¶ 105-06).

Astellas also asserts affirmative defenses to Lakeland Regional's tortious interference claim. Particularly, Astellas argues: "Astellas's alleged 'interference' amounts to nothing more than the lawful exercise of its patent right to protect its own business interests." (Doc. # 16 at 53). Justification or privilege to interfere with a contract is an affirmative defense to a tortious interference action. <u>See Abele v. Sawyer</u>, 750 So. 2d 70, 75 (Fla. 4th DCA 1999). However, the mere presence of a possible affirmative defense, which has not yet been proven, does not present a basis for the dismissal of this claim.

## IV.   <u>Conclusion</u>

As adeptly stated in <u>Schering-Plough Corp.</u>, "Although the exclusionary power of a patent may seem incongruous with the goals of antitrust law, a delicate balance must be drawn between the two regulatory schemes." 402 F.3d at 1067. In deciding the present Motion, the Court has attempted to strike an appropriate balance between the parties' conflicting interests. This Court has evaluated the parties' arguments and determines that dismissal of the complaint is not warranted.

Many of the arguments presented by Astellas are directed to matters outside of the four corners of the amended complaint. In passing on these arguments without delving into

them, the Court has not determined that they are meritless.

Rather, the Court finds that these arguments are prematurely asserted, and will be given due consideration at the appropriate stage of the proceedings if reasserted.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

Astellas's Motion to Dismiss the Complaint (Doc. # 16) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>25th</u> day of July, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record